UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VALENTINO HENDERSON,                    )
                                        )
              Petitioner,               )
        v.                              )           CIVIL ACTION
                                        )           NO. 17-10451-JGD
JEFFREY GRONDOLSKY, Warden              )
                                        )
              Respondent.               )

# MEMORANDUM OF DECISION AND ORDER ON
# PETITION FOR WRIT OF HABEAS CORPUS
# AND GOVERNMENT'S MOTION TO DISMISS THE PETITION

March 28, 2019

DEIN, U.S.M.J.

## I. INTRODUCTION

On January 9, 2007, the Petitioner, Valentino Henderson, was convicted by a jury sitting

in the United States District Court, Middle District of Pennsylvania, of one count of conspiracy

to distribute and possess with intent to distribute two kilograms and more of cocaine hydro-

chloride in violation of 21 U.S.C. § 846, and one count of distribution and possession with intent

to distribute two kilograms and more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a).

United States District Court, Middle District of Pennsylvania (Harrisburg) Cr. No. 1:06cr234.[1]  He

was sentenced as a career offender under U.S. Sentencing Guidelines Manual ("U.S.S.G." or

"Sentencing Guidelines") §§ 4B1.1 and 4B1.2 to 160 months, concurrently on each count.  His

---

[1]  A copy of the docket is attached to the Government's Memorandum (Docket No. 11) as Appendix A.  It
will be cited as "PA Dkt."

career offender status was based upon prior Pennsylvania state law convictions for aggravated assault and possession with intent to deliver cocaine.

Henderson's conviction was affirmed on appeal.  He subsequently filed a petition pursuant to 28 U.S.C. § 2255 with the U.S. District Court for the Middle District of Pennsylvania, arguing ineffective assistance of counsel.  His petition was denied.  Subsequently, Henderson sought leave from the Court of Appeals for the Third Circuit to file a successive § 2255 habeas petition with the Pennsylvania Middle District Court challenging his sentence as a career offender on the grounds that his prior Pennsylvania state conviction of aggravated assault did not qualify as a crime of violence under Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015).  These challenges ultimately proved unsuccessful.

Henderson is currently incarcerated at the Federal Medical Center, Devens, in Ayer, Massachusetts.  He has filed the instant habeas petition pursuant to 28 U.S.C. § 2241, alleging that his prior Pennsylvania state court convictions are not qualifying crimes of violence or controlled substance offenses under Descamps v. United States, 570 U.S. 254, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013), Johnson v. United States, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), and Mathis v. United States, 136 S. Ct. 2243, 195 L. Ed. 2d 604 (2016).  He is seeking to be resentenced as a non-career offender.  The Government has moved to dismiss Henderson's petition for lack of jurisdiction, or, in the alternative, requests that the petition be denied on substantive grounds.  Docket No. 11.

For the reasons detailed herein, this court finds that it lacks jurisdiction over the instant petition, and that, in the alternative, there was no error in sentencing.  Therefore, the Government's motion to dismiss or deny the habeas petition is ALLOWED.

[2]

## II.  STATEMENT OF FACTS[2]

### The Original Sentence

On January 9, 2007, Henderson was convicted of conspiracy to distribute and possess with intent to distribute two kilograms and more of cocaine hydrochloride in violation of 21 U.S.C. § 846, and distribution and possession with intent to distribute two kilograms and more of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1).  PA Dkt. No. 43; Ex. 1.  The Presentence Report (App. B) ("PSR") calculated the total offense level to be 34.  PSR ¶¶ 16, 24.  While Henderson's criminal history was originally calculated at IV, it was increased to VI upon the conclusion that he was a career offender.  PSR ¶¶ 23, 31.  His career offender status was based on the fact that he was at least 18 years old at the time of the offense, the offense was a controlled substance offense, and, as discussed more fully below, he had at least two prior felony convictions for crimes of violence and controlled substance offenses.  Id.  The change in the criminal history calculation from IV to VI increased the applicable Guideline range from 210 to 262 months to 262 to 327 months of incarceration.  PSR ¶ 50; see U.S.S.G. Chapter 5, Sentencing Table.

The sentencing judge rejected the Government's calculation of the amount of drugs involved and concluded that Henderson's base offense level would have been 28 absent his career offender status, not the 34 calculated by the Government.  Nevertheless, the base level was increased to 34 due to Henderson's status as a career offender.  Sentencing Transcript (Ex.

---

[2]  Excerpts from Henderson's record are attached to the Government's Memorandum (Docket No. 11) as exhibits and appendices.  Exhibits will be cited as "Ex. __" and appendices will be cited as "App. __."  The record is not in dispute and is appropriately considered in connection with the motion to dismiss.

3) at 10.  The sentencing judge also found that "the defendant's career offender designation substantially overrepresents the seriousness of his criminal history and the likelihood that he will commit other crimes." Id. at 24.  Consequently, the court allowed a downward departure to a criminal history category of V and an offense level of 30.  Id.  The Guideline range was then reduced to 151 to 188 months.  Id.  Henderson was sentenced to 160 months on each count, to be served concurrently.  Id. at 29.

With an offense level of 28 and a criminal history category of IV, the Guideline range at the time of sentencing would have been 110 to 137 months if Henderson had not been a career offender.  See Docket No. 11 at 9 & n.10.  Subsequently, if Henderson had been entitled to the sentence reduction authorized by Amendment 782 to the United States Sentencing Commission Guidelines Manual,[3] it is estimated that Henderson's sentencing Guideline range would have been reduced to 92 to 115 months based on an offense level of 26 and a criminal history category of IV.  See Ex. 8 at 3.  Henderson is asking to be resentenced at that range.

### Prior Convictions

Henderson had two prior felony convictions that resulted in his status as a career offender.  In 1995, when he was 19, he was found guilty following a non-jury trial of possession with intent to distribute crack cocaine.  PSR ¶ 27.  He was sentenced to 8 to 23 months and was paroled before his term expired.  Id.  The charges resulted from a search of the defendant's home by police where he was found in possession of 11 packets of crack cocaine, weighing a

---

[3]  Amendment 782 adjusted the drug quantity tables retroactively, which, in turn, could result in a reduced sentence.  See U.S.S.G. app. C Supp., Amend. 782 (U.S. Sentencing Comm'n 2014).  Henderson was denied a sentence reduction under Amendment 782 because of his career offender status.  Ex. 8 at 3 n.2; PA Dkt. No. 120.

[4]

total of 1.51 grams, $282.00, baggies, and razor blades.  Id.   A confidential informant had

previously purchased drugs from Henderson.  Id.  The information charging Henderson with this

offense provided as follows:

> **THE DISTRICT ATTORNEY** of York County by this information charges that on or about **July 19, 1994**, in said Count of York, **Valentino Elmando Henderson** did, at the County aforesaid and within the jurisdiction of this Court, without authority, manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance or knowingly create, deliver or possess with intent to deliver a counterfeit controlled substance as set forth in **Schedule II** to wit: **said defendant did possess Crack Cocaine with the intent to deliver,** thereby committing the offense of **Manufacturing or Delivering a Controlled or Counterfeit Substance; or Possession With Intent to Manufacture or Deliver a Controlled or Counterfeit Substance**, a **Felony,** all of which is against the Act of Assembly* and the peace and dignity of The Commonwealth of Pennsylvania.
>
> *Act of April 14, 1972, as amended; 35 C.P.S.A. §780-113(a)(30) as amended.

Ex. 14 (emphasis in original).

In 1999, when he was 23, Henderson pleaded nolo contendere to aggravated assault,

and was found guilty of resisting arrest, disorderly conduct and harassment.  PSR ¶ 28.  He was

sentenced to 6 to 23 months of imprisonment and was paroled before his term expired.  Id.

These charges arose out a confrontation at a nightclub between the defendant and the club

owner.  Id.  When the police arrived, the defendant swung at a police officer, resisted arrest,

and had to be subdued with pepper spray.  Id.  The information to which Henderson pleaded

nolo contendere provided as follows:

> **THE DISTRICT ATTORNEY** of York County by this information charges that on or about **May 3, 1998**, in said Count of York, **Valentino Elmando Henderson** did, at the County aforesaid and within the jurisdiction of this Court, attempt to cause or intentionally or knowingly caused bodily injury to any of the officers, agents, employees or other persons enumerated in 18 Pa.C.S. § 2702(c), as amended, in the performance of duty, **to wit**: said defendant did attempt to cause or intentionally or knowingly caused bodily injury to police

officers while attempting to make an arrest, thereby committing the offense of **Aggravated Assault**, a **Felony** of the **Second degree**, all of which is against the Act of Assembly* and peace and dignity of The Commonwealth of Pennsylvania.

*Act of December 6, 1972, as amended; 18 Pa.C.S. §2702(a)(3), as amended.

Ex. 13  (emphasis in original).

As noted above, the sentencing judge had found that Henderson's status as a career offender on the basis of these convictions overstated the seriousness of his criminal history.

### Post-trial Proceedings

Henderson appealed his convictions to the Third Circuit Court of Appeals.  United States v. Henderson, 289 F. App'x 485 (3d Cir. 2008).  On appeal, Henderson challenged the admissibility of some testimony and claimed ineffective assistance of counsel.  Id. at 487.  The Third Circuit affirmed the evidentiary rulings and convictions, and held that the proper procedure for asserting an ineffective assistance of counsel claim was to file a habeas petition pursuant to 28 U.S.C. § 2255, rather than raising the issue on direct appeal.  Id. at 487-88.

On April 3, 2009, Henderson filed a habeas petition pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel.  Exs. 5 & 6.  The trial judge denied the petition in a memorandum dated April 19, 2010.  United States v. Henderson, No. 1:06-CR-0234, 2010 WL 1565295 (M.D. Pa. Apr. 19, 2010); Ex. 7.  The denial of the habeas petition was affirmed by the Third Circuit.  United States v. Henderson, 437 F. App'x 96 (3d Cir. 2011).

On April 12, 2016, Henderson filed a motion under 28 U.S.C. § 2244 with the Third Circuit seeking leave to file a successive § 2255 habeas petition with the Middle District of Pennsylvania, asserting that his prior state court conviction for aggravated assault did not qualify as a crime of violence under Johnson.  See App. C (Third Circuit Docket); Ex. 8 at 4 n.3;

Ex. 9.  In Johnson, the Supreme Court held that the residual clause of the Armed Career

Criminal Act ("ACCA") was unconstitutionally vague, such that an increased sentence under the

ACCA's residual clause violated the defendant's due process rights.  135 S. Ct. at 2557.[4]

Henderson, through counsel, concurrently raised the Johnson issue in a motion to correct

sentence under 28 U.S.C. § 2255 filed with the District Court of the Middle District of

Pennsylvania, along with a motion to stay proceedings pending a ruling by the Third Circuit on

the request for leave to file the successive § 2255 petition.  PA Dkt. Nos. 122 & 123; Exs. 8 & 9.

In his proposed successive § 2255 petition, Henderson argued that the Johnson analysis

mandated that the residual clause of the Sentencing Guidelines also be declared

unconstitutionally vague as the language is identical to the residual clause of the ACCA, and

that even if the Sentencing Guidelines' residual clause remained enforceable, Johnson required

a new analysis of whether the predicate crimes of which he was convicted still qualified as

crimes of violence.  Ex. 8 at 5-9.  Applying the analysis of predicate crimes mandated by

Descamps, among other cases, Henderson argued that his state law convictions did not qualify

as crimes of violence.  Ex. 8 at 10-15.  Henderson's motion to stay pending leave from the Third

Circuit was allowed on June 27, 2016.  PA Dkt. No. 125; Ex. 10.

On March 6, 2017, the United States Supreme Court issued its decision in Beckles v.

United States, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017).  Therein, the Court held that the

---

[4] Prior to Johnson, the Supreme Court had held in Begay v. United States, 553 U.S. 137, 128 S. Ct. 1581, 170 L. Ed. 2d 490 (2008), that the residual clause of the ACCA was limited to those predicate convictions involving deliberate behavior, rather than mere recklessness or negligence.  See id. at 146, 128 S. Ct. at 1587.  Even though Begay has effectively been overruled by Johnson, the petitioner appears to rely on Begay for some of his arguments.  Begay is not relevant to the instant petition, as the petitioner's predicate convictions were based on statutory provisions that require knowledge or purpose, rather than mere recklessness.

Sentencing Guidelines, including the residual clause found in § 4B1.2(a), were not subject to vagueness challenges under the Due Process Clause.  Id. at 892.  On March 16, 2017, Henderson filed the instant habeas petition in this court pursuant to 28 U.S.C. § 2241.  On March 24, 2017, the Third Circuit Court of Appeals ordered Henderson and others to show cause why their applications under 28 U.S.C. §§ 2244 and 2255 should not be denied in light of the Beckles ruling.  Ex. 11 (No. 16-1861).  The petitioners were given 21 days to respond, which Henderson failed to do.  See App. C; Ex. 11.  On July 10, 2017, the Third Circuit denied Henderson's motion for leave to file a successive § 2255 petition, ruling in relevant part as follows:

> Petitioner was sentenced under the advisory Sentencing Guidelines.  In his § 2244/2255(h) application, he initially sought leave to challenge his sentence on the ground that the definition of "crime of violence" contained in the residual clause of U.S.S.G. § 4B1.2(a) is unconstitutionally vague.  Petitioner relied for that proposition on Johnson v. United States, 135 S. Ct. 2551 (2015), and he argued that Johnson constitutes a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  The Supreme Court, however, has since held that the analysis in Johnson does not apply to the advisory Sentencing Guidelines and that, as a result, "§ 4B1.2(a)'s residual clause is not void for vagueness."  Beckles v. United States, 137 S. Ct. 886, 897 (2017).  Thus, petitioner has not made a prima facie showing that his proposed § 2255 motion satisfies the § 2255(h) standard because, under Beckles, Johnson did not announce a new rule of constitutional law invalidating § 4B1.2(a)'s residual clause.  Petitioner also has not responded to the Clerk's order to show cause why his petition should not be denied in light of Beckles.

Ex. 12.  As a result of this ruling, Henderson's § 2255 motion before the District Court of the Middle District of Pennsylvania was dismissed.  PA Dkt. 126.

### The Instant Habeas Petition

As noted above, Henderson is incarcerated at Fort Devens in Massachusetts.  He brought the instant habeas petition pursuant to 28 U.S.C. § 2241, arguing that his prior

convictions do not qualify as predicate crimes of violence or controlled substance offenses under the Supreme Court's analysis in <u>Descamps</u> and <u>Mathis</u>.  While the Petitioner's argument as to <u>Descamps</u> was raised in Henderson's proposed § 2255 Motion to Correct Sentence before the Pennsylvania Middle District Court, it was not addressed on the merits since the Third Circuit denied him leave to file a successive § 2255 habeas petition.[5]

In his opposition to the Government's motion to dismiss, Henderson also makes it clear that he is no longer contending that <u>Johnson</u> renders the residual clause of the Sentencing Guidelines unconstitutionally vague.  <u>See</u> Docket No. 14 at 2.  That argument is precluded by <u>Beckles</u> and will not be discussed further herein.  Rather, Henderson is contending that his prior convictions do not qualify as predicate convictions under the Sentencing Guidelines.  <u>Id.</u>  The Government has moved to dismiss the instant petition, or, in the alternative, to deny the petition.  Docket No. 11.  Henderson has filed a memorandum in support of his habeas petition as well as an opposition to the Government's motion.  Docket Nos. 1 & 14.

Additional facts will be provided below where appropriate.

### III. <u>ANALYSIS</u>

**A.      The Petition Is Not Properly Brought Under § 2241**

As an initial matter, the Government contends that this court does not properly have jurisdiction over the instant petition.  Although Henderson purports to bring his petition under 28 U.S.C. § 2241 in the District Court for the District where he is presently incarcerated, the

---

[5] The Petitioner filed his proposed § 2255 motion the day before the Supreme Court issued its opinion in <u>Mathis</u>.  In a footnote to his motion, the Petitioner did reserve the right to make additional arguments on the basis of <u>Mathis</u> once the opinion was released.  Ex. 8 at 13 n.11.  However, the Petitioner ultimately failed to do so, even after the Third Circuit issued its show cause order.

Government argues that the claims raised must be brought pursuant to 28 U.S.C. § 2255 in the District Court for the District where he was sentenced.  See United States v. Barrett, 178 F.3d 34, 50 n.10 (1st Cir. 1999).  This court agrees.

"Under 28 U.S.C. § 2255, a defendant may seek post-conviction relief from his sentence in four instances: if the sentence '(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack.'"  United States v. Duval, 957 F. Supp. 2d 100, 105-06 (D. Mass. 2013) (quoting David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)).  A collateral challenge to the length of the sentence is traditionally raised in a habeas petition brought before the sentencing court pursuant to 28 U.S.C. § 2255.  Hankinson v. Grondolsky, C.A. No. 14-11702-FDS, 2014 WL 5025819, at *2 (D. Mass. Oct. 8, 2014), and cases cited; see Trenkler v. United States, 536 F.3d 85, 97-98 (1st Cir. 2008) (§ 2255 designed to address claim that sentence was in excess of term allowed by statute).

In contrast to § 2255, a "motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions."  Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001) (emphasis in original).  There is no question that Henderson has not brought such a claim. Nevertheless, he contends that he may challenge his conviction through a petition under § 2241 pursuant to the "savings clause" of § 2255.  That provision allows a federal prisoner to "file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is 'inadequate or ineffective to test the legality of his detention.'"

Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000) (quoting 28 U.S.C. § 2255);

Sustache-Rivera v. United States, 221 F.3d 8, 12 (1st Cir. 2000).  Henderson, however, has failed

to establish that the "extraordinary circumstances" warranting the application of this savings

clause exist in the instant case.  See Gonzalez v. United States, 150 F. Supp. 2d 236, 243-44 (D.

Mass. 2001).  The "courts are very clear that a petitioner cannot evade the restrictions of

§ 2255 by resorting to § 2241."  Id. at 241, and cases cited.

      "The remedy in section 2255 does not become 'inadequate or ineffective' simply by

virtue of the fact that the prisoner is not able to meet the gate-keeping requirements for

second or successive petitions."  Hernandez-Albino v. Haynes, 368 F. App'x 156 (1st Cir. 2010).

Use of the savings clause has only been permitted in "rare and exceptional circumstances, such

as those in which strict adherence to AEDPA's gatekeeping provisions would result in a

'complete miscarriage of justice[.]'"  Trenkler, 536 F.3d at 99 (quoting In re Dorsainvil, 119 F.3d

245, 251 (3d Cir. 1997)).  "The Supreme Court has defined the term 'miscarriage of justice' as

encompassing only those 'extraordinary instances when a constitutional violation probably has

caused the conviction of one innocent of the crime.'"  Id. (quoting McCleskey v. Zant, 499 U.S.

467, 494, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991)).

      At present, the First Circuit has yet to "articulate[] the full scope of circumstances under

which the saving[s] clause could apply."  United States v. Almenas, 52 F. Supp. 3d 341, 345 (D.

Mass. 2014).  However, the Government and the Petitioner appear to largely agree on a three-

prong formulation largely reflective of the analysis used in other circuits to evaluate savings

clause claims.  See, e.g., In re Jones, 226 F.3d 328, 333-34 (4th Cir. 2000) (allowing motions

under savings clause when "(1) at the time of conviction, settled law of this circuit or the

Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law."); Reyes-Requena v. United States, 243 F.3d 893, 902-03 (5th Cir. 2001) ("The standards that [our sister circuits] have articulated for the savings clause may not be framed in identical terms, but the following basic features are evident in most formulations: actual innocence and retroact-tivity."); In re Dorsainvil, 119 F.3d at 251 (allowing motion under savings clause for "a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate").  Specifically, the Government argues that the savings clause is applicable when the defendant's claim: (i) is based on a retroactively applicable Supreme Court decision post-dating the completion of the defendant's initial § 2255 motion; (ii) was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or prior § 2255 motion; and (iii) involves an assertion of a fundamental error in the underlying criminal judgment.  See Docket No. 11 at 8.  The Petitioner agrees as to the first two prongs, but instead articulates the third prong as applying to cases in which, subsequent to the petitioner's direct appeal and first §2255 motion, the substantive law changed such that the conduct for which the prisoner was convicted is no longer deemed to be criminal.  See Docket No. 1 at 2, 23-24.  This court need not define the precise analysis to be followed in assessing the applicability of the savings clause, as this court concludes that under any formulation the Petitioner's claim does not qualify for the extraordinary relief provided by

the savings clause of § 2255.  However, for convenience, the court will proceed under the

formulation adopted by the parties.

  As an initial matter, it is unclear that the savings clause applies where, as here, the new

Supreme Court cases that the petitioner contends should be applied retroactively relate to

sentencing concerns, rather than his guilt in the underlying crime for which he was convicted.

"[The First Circuit] has recognized that the savings clause is most often used in situations where

a retroactive Supreme Court decision as to the meaning of a criminal statute would mean that a

prisoner was not guilty of the crime of which he was convicted."  Almenas, 52 F. Supp. 3d at

345.  Thus, since the Supreme Court cases Henderson invokes do not render him innocent of

the crimes for which he was convicted, it is questionable whether the savings clause can even

be applied.  See id. (doubting whether savings clause can be applied where petitioner's conten-

tion is that the application of Descamps to his prior criminal history changes his status as a

career offender), and cases cited; see also Henderson v. Grondolsky, C.A. No. 16-12459-DJC,

2017 WL 4038392, at *3 (D. Mass. Sept. 12, 2017) (explaining that in other circuits a mere

"post-conviction change in the law affecting the sentencing court's determination of the guide-

lines range does not rise to a complete miscarriage of justice" justifying the invocation of the

savings clause), and cases cited.  The errors claimed by Henderson do not even rise to the level

of vacating a predicate offense which, in and of itself, may not even be sufficient to render the

savings clause applicable.  See Duval, 957 F. Supp. 2d at 113-14 (summarizing split of authority

as to whether the petitioner must be actually innocent of the crime for which he has been

sentenced, or if being factually innocent of a predicate crime which forms the basis of an

enhanced sentence is sufficient to warrant collateral relief), and cases cited; see also United

States v. Barrett, Nos. CR 10-062 ML, CR 10-135 ML, 2015 WL 4920803, at *3 (D.R.I. Aug. 18,

2015) ("The First Circuit has not yet decided whether the actual innocence exception applies to

a sentencing enhancement.").  There is no need to resolve that issue in the instant case,

however, since based on the factual record presented here, Henderson has not established that

there are other factors which would warrant the extraordinary relief he is seeking.

The record before this court establishes further that Henderson has not been prevented

from presenting his claims in § 2255 motions before the sentencing court.  The "essential

function of habeas corpus" is to give "'a prisoner a reasonable opportunity to obtain a reliable

judicial determination of the fundamental legality of his conviction and sentence.'"  Barrett, 178

F.3d at 51 (quoting In re Davenport, 147 F.3d 605, 609 (7th Cir. 1998)).  Here, Henderson

presented his claims to the Pennsylvania Middle District Court in his proposed § 2255 motion to

correct sentence and to the Third Circuit in his motion for leave to file a successive § 2255

petition.  He then failed to respond to the Third Circuit's show cause order as to why his motion

should not be denied in light of Beckles, even though all of the Supreme Court cases upon

which he now substantively relies had been decided by that point.  Therefore, allowing

Henderson to proceed under § 2241 "is not needed to give him a reasonable opportunity to

obtain a reliable judicial determination" regarding the legality of his sentence.  In re Davenport,

147 F.3d at 609.  "That the Third Circuit denied [Henderson] permission to advance this claim

via a second or successive petition does not, on its own, render § 2255 inadequate or ineffec-

tive." Pryer v. Grondolsky, C.A. No. 17-11094-LTS, 2017 WL 4540959, at *3 (D. Mass. Oct. 11,

2017) (footnote omitted).

[14]

Finally, even assuming that Henderson could overcome these hurdles in seeking extraordinary § 2241 relief, he cannot establish that there has been a fundamental error in the underlying criminal judgment.  As detailed below, the Supreme Court cases on which he relies do not warrant a recalculation of his sentence.

**B.      Henderson's Prior Convictions Were Properly Considered**

In the instant case, Henderson contends that his prior convictions for aggravated assault and possession with intent to distribute cocaine should not be considered in determining whether he was a career offender.  This court finds that these prior convictions were appropriately counted.

To qualify as a career offender under the Sentencing Guidelines, a defendant must, inter alia, have two prior felony convictions of either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).  At the time of Henderson's sentencing, a crime of violence was defined under the Guidelines as follows:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that —
>
> (1)  has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)  is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (2006) (emphasis added).  Subpart (1) is commonly referred to as the "force" clause, while the italicized portion of subpart (2) is referred to as the "residual" clause.

At the time of Henderson's sentencing, the same definition of a crime of violence was found in the ACCA, 18 U.S.C. § 924(e)(2)(B) (defining "violent felony").  In Johnson, the Supreme Court held that the residual clause of the ACCA was void for vagueness, and that, consequently,

[15]

a conviction pursuant to that clause could not form the basis for career offender status.  135 S.

Ct. at 2563.  In Beckles, however, the Supreme Court ruled that, despite the similarity between

the language in the ACCA and the Sentencing Guidelines, U.S.S.G. "§ 4B1.2(a)'s residual clause is

not void for vagueness."  137 S. Ct. at 897.  Nevertheless, since Henderson's aggravated assault

conviction qualifies as a predicate crime under the force clause, this court will not address

Henderson's argument that it does not qualify under the residual clause.

### Henderson's Aggravated Assault Conviction

On January 6, 1999, Henderson pleaded nolo contendere to an information charging

him with aggravated assault under 18 Pa. Cons. Stat. § 2702.  At the time of his arrest and

conviction, the pertinent sections of the aggravated assault statute provided:

> **(a)  Offense defined.**--A person is guilty of aggravated assault if he:
> ...
> (3)  attempts to cause or intentionally or knowingly causes bodily injury
> to any of the officers, agents, employees or other persons enumerated
> in subsection (c), in the performance of duty;
> ...
> **(c)  Officers, employees, etc., enumerated.**--The officers, agents, employees
> and other persons referred to in subsection (a) shall be as follows:
> (1)  Police officer.

18 Pa. Cons. Stat. § 2702 (2004).  Henderson contends that his assault conviction does not fall

within the force clause of U.S.S.G. § 4B1.2(a)(1).  This argument is not persuasive.

As the Supreme Court recognized in Descamps, in order to determine whether a past

conviction qualifies as a "violent felony" under the ACCA, "courts use what has become known

as the 'categorical approach[.]'"  570 U.S. at 257, 133 S. Ct. at 2281.  Under this approach,

courts "compare the elements of the statute forming the basis of the defendant's [prior]

[16]

conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." Id.  "[I]f the statute's elements are the same as, or narrower than, those of the generic offense[,]" then the prior conviction qualifies as an ACCA predicate conviction.  Id.  For "divisible" statutes, which set out alternative sets of elements, each of which meet the definition of the statutory offense in the alternative, courts apply a "modified categorical approach" which "permits sentencing courts to consult a limited class of documents [often referred to as Shepard documents], such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."  Id.  Once the sentencing court identifies which alternative was at issue in the defendant's case, the court then compares that particular set of elements with the elements of the generic crime.  Id.  In Descamps, the Court ruled that when a sentencing court is instead faced with an "'indivisible' statute – *i.e.*, one not containing alternative [sets of] elements[,]" the court cannot use Shepard documents to help determine whether the prior conviction qualifies as a predicate offense under the ACCA.  Id. at 258, 133 S. Ct. at 2281-82.  Thus, if the "indivisible" statute defines the crime more broadly than the generic offense it will not qualify as an ACCA predicate, even if the specific facts of the case would fall within the definition of the generic offense.  Id. at 277-78, 133 S. Ct. at 2293.  In Mathis, the Supreme Court further clarified the extent to which courts may refer to Shepard documents to determine whether a prior conviction qualifies as a predicate offense under the ACCA.  There, the Court ruled that when a criminal statute lists alternative means of *fulfilling* a particular element of a crime, the sentencing court may not refer to Shepard documents to focus its ACCA analysis on whichever means was at issue in the

[17]

defendant's predicate conviction.  Mathis, 136 S. Ct. at 2253-54.  Applying this analytical frame-work to the Sentencing Guidelines, Henderson argues that his conviction for aggravated assault was based on an indivisible statute that was broader than the definition of "crime of violence" under the Sentencing Guidelines.  Henderson contends that, at best, the statute lists alternative means of fulfilling an element of the crime, not alternative sets of elements that satisfy the definition of the crime.  This argument is without merit.

As an initial matter, Henderson argues that the record does not identify the specific subsection of 18 Pa. Cons. Stat. § 2702 under which he was convicted.  However, the information to which the petitioner pleaded nolo contendere on the aggravated assault charge specifies that the petitioner was convicted pursuant to subsection (a)(3).  See Ex. 13.  Under § 2702(a)(3), "[a] person is guilty of aggravated assault if he . . . attempts to cause or inten-tionally or knowingly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty."

Henderson next contends that the statute is indivisible, and only specifies different methods of satisfying the same elements, as in Mathis.  However, "[c]ourts have consistently held that the Pennsylvania aggravated assault statute is divisible because its subparts criminalize 'different conduct, with different elements that need to be met, rather than listing different means of meeting the same elements.'"  United States v. Collins, No. 01-CR-780-1, 2018 WL 278703, at *5 (E.D. Pa. Jan. 3, 2018) (quoting United States v. Lewis, 15-cr-368, 2017 WL 368088, at *2 (E.D. Pa. Jan. 25, 2017)), and cases cited; see United States v. Gorny, 655 F. App'x 920, 924 (3d Cir. 2016) ("we first employ a modified categorical approach to ascertain which subsection of Pennsylvania's divisible aggravated assault statute [the defendant]

[18]

violated" (emphasis added)). Thus, this court may focus its analysis on the specific subsection

under which the Petitioner was convicted, § 2702(a)(3).

The Petitioner reasons that because Pennsylvania's aggravated assault statute does not

specify any particular means, forcible or otherwise, by which to cause harm, the statute does

not include an element of physical force against another and therefore his conviction does not

qualify as a crime of violence. To the contrary, this court agrees with the Third Circuit that, by

requiring a mens rea of knowledge or intent, § 2702(a)(3) "necessarily contemplates the use of

such physical force as to impair one's physical condition or produce substantial pain." United

States v. Costello, 720 F. App'x 120, 124 (3d Cir. 2018) (internal quotations omitted), cert.

denied, 138 S. Ct. 1039, 200 L. Ed. 2d 292 (2018). Further, sheer "[c]ommon sense dictates that

knowingly or intentionally causing impairment of another's physical condition requires the use

of physical force." Id. Like the other courts that have addressed the issue, this court concludes

that a conviction for aggravated assault pursuant to § 2702(a)(3) "fits comfortably within the

Sentencing Guidelines definition of a violent crime as any crime that 'has as an element the use,

attempted use, or threatened use of physical force against the person of another.'" United

States v. Pitts, 655 F. App'x 78, 81 (3d Cir. 2016) (footnote omitted) (quoting U.S.S.G. § 4B1.2);

see Costello, 720 F. App'x at 124 (concluding that conviction for aggravated assault under §

2702(a)(3) constitutes crime of violence under the Sentence Guidelines). Accordingly,

Henderson's conviction under § 2702(a)(3) may properly be considered a crime of violence for

the purposes of the career criminal enhancement.

### Possession with Intent Conviction

The Petitioner also challenges the use of his conviction for possession with intent to deliver cocaine as a predicate offense, arguing that it cannot be considered a controlled substance offense for the purpose of qualifying as a career offender.  Under U.S.S.G. § 4B1.2(b), a "controlled substance offense" that qualifies for career offender calculations

> is an offense that (1) is punishable by a term of imprisonment that exceeds one year and (2) "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." *Id.* § 4B1.2(b).  A state conviction cannot qualify as a "controlled substance offense" if its elements are broader than those listed in § 4B1.2(b).  *See Mathis v. United States*, – U.S. –, 136 S. Ct. 2243, 2251, 195 L. Ed. 2d 604 (2016) (holding, in the Armed Career Criminal Act ("ACCA") context, that "a state crime cannot qualify as ... [a] predicate if its elements are broader than those of a listed generic offense"); *see also United States v. Hinkle*, 832 F.3d 569, 574 (5th Cir. 2016) (applying *Mathis* to analysis of § 4B1.1).*

> > *  The parties agree that, with some exceptions not relevant here, cases concerning overbreadth of a state criminal statute in the context of the ACCA also apply to the career-offender context.

United States v. Glass, 904 F.3d 319, 321-22 (3d Cir. 2018), cert. denied 139 S. Ct. 840 (2019).

Henderson relies on the Fifth Circuit's reasoning in United States v. Hinkle, 832 F.3d 569, 574-76 (5th Cir. 2016), wherein the court concluded that a Texas law that criminalized mere offers to sell drugs was too broad to fit within the definition of a controlled substance offense under U.S.S.G. § 4B1.2. [6]  The Third Circuit has since addressed this very argument in United

---

[6] In his opposition to the Government's motion to dismiss, Henderson also cites Swaby v. Yates, 847 F.3d 62 (1st Cir. 2017), wherein the First Circuit addressed whether an immigrant's drug conviction under Rhode Island law qualified as a predicate offense triggering removal under 8 U.S.C. § 1227(a)(2)(B)(i). The statutory schemes at issue in Swaby differ from the ones at issue here, and Swaby is not relevant to this court's analysis.

States v. Glass, 904 F.3d 319 (2018).  There, the court concluded that 35 Pa. Cons. Stat. § 780-

113(a)(30), the exact subsection under which the petitioner was convicted, does not criminalize

mere offers to sell, and that convictions under § 780-113(a)(30) were appropriately considered

controlled substance offenses.  Glass, 904 F.3d at 322-23.  This court is persuaded by the very

thorough analysis detailed by the Third Circuit in Glass.  Thus, the Petitioner's prior conviction

for possession with intent to deliver can properly be considered a controlled substance offense

under U.S.S.G. § 4B1.2, and Henderson was properly sentenced by the sentencing court, even in

light of Descamps and Mathis.[7, 8]

## IV.  CONCLUSION

For all the reasons detailed above, the Government's Motion to Dismiss (Docket No. 11)

is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7]  The Petitioner also argues that resisting arrest is not a crime of violence for the purposes of qualifying as a career offender.  The Petitioner's career offender enhancement was not based on his conviction for resisting arrest and the Government does not argue that Petitioner's resisting arrest conviction supports his classification as such.  Accordingly, this court need not address the argument.

[8]  In his opposition to the motion to dismiss, the Petitioner also urges the court to consider the Supreme Court's holding in Dean v. United States, 137 S. Ct. 1170, 197 L. Ed. 2d 490 (2017).  The statute at issue in that case, 18 U.S.C. § 924(c), pertains to the use or possession of a firearm in relation to a crime of violence or drug trafficking crime.  Under the statute, a distinct penalty must be imposed in addition to, and consecutive with, the sentence imposed for the predicate crime of violence or drug trafficking crime.  Dean, which merely holds that § 924(c) does not prevent the sentencing judge from considering the distinct sentence imposed by the statute when deciding how to sentence the defendant for the predicate crime, has no relevance to the instant petition.  137 S. Ct. at 1177-78.